Good morning. May it please the court, Assistant Attorney General for the State of Michigan, John Thurber, on behalf of the defendants, Joseph Serafin and Will Taylor, I would like to reserve three minutes for rebuttal. Okay, you may proceed. Thank you. This case requires a straightforward application of basic principles of qualified immunity. In 2013 and 2014, it was unclear, and I believe it's still unclear, but certainly then it was unclear that when a prison official caused a prisoner to miss a single religious service, that that conduct violated either the free exercise or establishment clause of the First Amendment or the Fourteenth Amendment. Does it make a difference that the single service that's missed is a critical, significant religious event? You've got the cases where a prisoner has missed a kosher meal or something of that nature. But here you're talking about Ramadan and the end of Ramadan, and it's one of the most holy holidays as I understand it. And it's not just a meal. It's not just a missed meal. Right. And I understand certainly that that's a fair question. The plaintiffs raised that issue, Your Honor. I guess I would go back to say that I have not, and I don't believe the plaintiffs cited to any cases, I've not seen any cases from this circuit or from the Supreme Court or from the district courts that kind of rank the services that someone missed. I mean, I don't know. I mean, it's a pretty important point. No, go ahead. I mean, you know, Ramadan's a very, very important holiday, for lack of a better term. This is the end of it. I mean, it would be like, you know, denying somebody, not letting a Christian go to Easter services after Lent and everything. I mean, it's sort of obviously important, isn't it? It is, but I think it would be tough for this court to draw a distinction in terms of rankings. And you're right. Could you make the argument that you're right, you're a Catholic. And you missed Easter service. Is that more important than just some Sunday service in June? We have to be very careful about making theological judgments. Right. But on the other hand, come on. You know, it's obvious, isn't it? But what I would say is, though, again, but that would require, I think, this court to make those sorts of theological judgments. Because some people's religious adherence may mean that, I mean, I'm an Episcopalian. And for me, going to church every Sunday is important. And I guess my own personal belief system, I wouldn't rank. I get it that Christmas is a family time. But I don't think this court can say, well, this is more important, so therefore missing this one is, but this one isn't. So it's not a court decision, but the Michigan Department of Corrections certainly made some distinctions in terms of its policy directives and noting that Passover was of a certain level holiday and the corrections system should recognize it in a certain way vis-a-vis prisoners being able to worship. And the same thing for Christmas and holidays like that. And as I understand it, Ramadan and Eid al-Fitr, if I'm pronouncing it correctly, is at that same level. And I guess, again, I would come back to two things. If this court is going to make that distinction, I'd still say we're entitled to qualified immunity because there's not been, again, at least that I found, any case law that says that missing Eid al-Fitr, say for a Muslim, or missing Easter for a Christian, or any other holiday of the same level of importance for any other religion would be, that's a constitutional violation. But if you miss, say you were a Muslim and someone missed Friday prayer, or if you were a Catholic and you couldn't go to a Sunday service, I'm not aware of any law that says that. So what about this Dowdell decision that's in the same case? Correct, right. And so in terms of Judge Cohn's Dowdell decision, I'm familiar with that because that was my case. So I was involved in that, settling that litigation as well. So I've had a fair amount of experience with these religion cases. But what I would say, and I realize it's a tight distinction, but Judge Cohn, his decision came down, and I want to get the dates right, but ultimately he did not enter his order on the Dowdell case. So the order had been issued, it's just that the judgment was entered later. And the judgment really is, one could argue, ministerial in a case like this. And to say that that order was not binding or effective, it just seems to, like you say, you're cutting the bologna pretty thin. It is, and I understand that, and I certainly understand that there's a valid argument to me either way. But I think that that distinction is important because at the end of the day, while it may be a ministerial function, that's when it goes into effect. Is this a consent judgment that went into effect? It was, now you're testing my memory. Did the state kind of like stipulate to the entry of the order or the judgment? I hate to misspeak on my own case, but that was from 2013. I'm sorry, let's change. Okay, no. Judge Cohn, I know we... Did you contest the order? We did because there was a magistrate judge did a report recommendation, and I would have done objections to that. I guess, again, if you look at Pacer and I'm wrong, I guess we can correct it. All right, I think the state approved the judgment as to form only. Yes. That's what you do in Michigan. It doesn't mean you stipulate to the entry of the judgment you're approving the form. Right. And that shows me that the judgment itself is a ministerial act. All it does is it says in judgment form what the district judge has already ordered in the order. It makes the order a judgment, and I think the state could be sanctioned if they didn't agree to the form of the judgment. I mean, that's as ministerial as you get, and I think that's all you did here. But since you have a ruling, I mean, this Dowdyell case, as far as I can tell, is the same case as this, is it not? Well, it's what Dowdyell said, at least it did other things other than just allow Muslims to attend. Sorry, Nation of Islam members, but all Muslims to attend the Eid al-Fitr. But what the petitioner, the plaintiff wants in this case is what Dowdyell wanted there, and you have a ruling by the district court in the Eastern District, the same district court, although it's a different judge. And isn't the law quite clear that the law is clearly established if the law is settled in the district court that you're in? And I think there's a lot of cases that say, for qualified immunity purposes, if the law is settled in that district court, it is clearly established for purposes of qualified immunity. How do you get around those cases? Well, what I would say is, first off, I don't think, and I cited to this court's unpublished opinion in the Hermanson case, which said that it was not binding precedent, even with a settlement it was not binding precedent for purposes of qualified immunity. But what I would also say is that Dowdyell is not precedent in the Eastern District. Are you bound by it? Well, the other judge isn't bound by it, but for purposes of qualified immunity, whether it's clearly established law in that district, that's clear, is it not? Don't you have a ruling in that district on that issue? I would say no. I would say no, not according to Hermanson. I could probably cite you about ten opinions. Well, I guess I would point, and certainly maybe we disagree on that, Your Honor, but I would say that if you look at the Hermanson opinion, Judge McKeague said the answer to that question is no. Which case is it? Is that from the same district court or is that from different district courts? Let's see. I want to make sure. I want to get that. Hermanson v. Thompson is Hermanson. It's H-E-R-M-A-N-S-E-N versus Thompson. It is an unpublished decision. Judge McKeague issued the opinion. It's 678 Fed APPX 321. It's from February 1st of 2017. All right. So there's a difference. I mean, usually qualified immunity, we're talking about whether there was a clear precedent. I wonder in this case, I mean, was the state where these defendants actually directly ordered? Was it an injunctive order that was entered? I mean, did they violate a court order as opposed to just, you know, they should have known from precedent? I mean, Judge Cohn ordered something. Did he order the state to allow people in this position to celebrate this holiday? He did. So, I mean, what's left to the official to figure out? You've got a court order telling you personally you better do this. But what I would say is if the – But in this instance, what I'm saying is, though, that qualified immunity is defined more narrowly, at least in my opinion in this case, is that – You get to violate an order once? You get a free violation? Well, I mean, I don't know. Maybe that's a little more blunt than I would put it, Your Honor. But if you do get – yes, and if you want an absolute answer, the answer is yes. And the implications are serious of that. I mean, this isn't just precedent. This is – you know, you get to violate – you get a free violation? Well, I think, sir – Of all people, Judge Cohn's order. That cannot be your answer. Well, but what I'm saying is it – President, if you define the right, this is where you get into the nitty-gritty of qualified immunity, and what's the question in this case? The question is if someone misses a particular service, it's been clearly established for, I mean, I don't know, certainly I would assume since the 60s, the late 60s or early 70s, the prisoners have a religious right. So that brought – We have RLUIPA too, right, federal law. We do, right, although that's not – in this case that doesn't apply, but that's correct. We have RLUIPA. So in the sense that the broad right to attend a service has been established, I agree with you. I agree. And that was established way before Judge Cohn's order. But what the position I'm taking is despite that, and courts have said, if someone misses a single service, that that's not enough. And this court has said it in a published opinion in Colvin. Granted, that was – Are you arguing the merits of Judge Cohn's decision? Is that what you're doing? You're saying he was wrongly – his decision in Downey L. was wrongly decided? I mean, that's really not the issue here, is it? Whether his decision, whether wrong or not, is clearly established in the Eastern District of Michigan. I think that's what the issue is. Even if you find that his decision clearly established that, it doesn't answer the question of whether someone misses a single service. That goes to the merits of his decision, does it? And that's not really before us, is it? Well, I don't think so. I guess, again – That doesn't entitle you to qualified immunity that, okay, there's a clearly established law or decision here. But guess what? I don't have to file it because it was wrongly decided. Is that a defense? No, that's not a defense. Is that what you're arguing, though? The defense is if someone – if a prison official's actions cause someone to miss a single service. And this is where I would say – I mean, again, I certainly wouldn't want to dismiss anyone's position. But as I said, broadly, you don't even have to look at Downey. I understand that there was a broad – I don't see my time's up, but a broad – Can I interrupt? Since we're in the red zone, can I just interrupt you for – Sure. Okay. There seems to be a total mismatch in this case. We're sitting here talking about clearly established law. And, you know, was the official confused about the law? I don't know how the official could be confused about the law in order from Judge Cohn staring him in the face. But be that as it may, you know, we're talking about, oh, is the law unclear, is it confusing? Meanwhile, he – the defendants made these decisions, it appears, not because of legal uncertainty at all. It wasn't, you know, he misunderstood the order. Somebody just screwed up about whether the Nation of Islam, you know, practices this particular – or, you know, observes the holiday. And so it seems like there's a mistake of fact that they made rather than confusion about the law. So, I mean, why aren't we talking about when a mistake of fact would give rise to qualified immunity or not, as opposed to when confusion about the law, of which there just couldn't have been here, gives rise to qualified immunity? Well, again, I guess I would go back to say is there's no confusion that people had a right to attend services. But what's not – was not clearly established – and I didn't get this point out before, I'll say it real quick. It's the plaintiff's burden to show that we're not – or my clients are not entitled to qualified immunity. And they've shown no – there's not a single case that they cite at least – I'm talking about – I'm asking why are we talking about the law when your clients made mistakes of fact? But – Let's say we disagree with you about the law. Let's say we determine for purposes of this case that the law was clear. Okay? Just hypothetically. I know you disagree. All right. I do, yes. Okay? And I know. I know you disagree. But if we make that decision, is there a reason you would say, well, it was a reasonable mistake of fact and therefore we don't lose? Well, I don't think that – Or not. Are you just not making that argument? Well, I guess I think that they're so wrapped together that you can't separate it as a mistake of fact and a mistake of law. The argument is he missed a service. Whatever the source of that missing a service is, it wasn't – missing one service isn't enough to show a constitutional violation. That it's essentially – and I would point out the plaintiffs have cited no case law, and I have cited cases, some unpublished cases, and I've relied on Colvin v. Caruso, which is this court's published opinion, that said, granted it was in the context of food, and I get it, it was missing kosher meals. So I realize it's not perfect. It's not a perfect analogy. The Alamo is the Colvin case. I got you. Okay. But I would say that they have no – there is no legal support for them to say that we're not entitled to qualified immunity. And it's their burden to show that my clients are not entitled to qualified immunity. Okay. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Sarah Fernshild on behalf of the appellee, Derek May. As you were noting with Mr. Thurber's argument, there is a prime importance attached to the Eid observance, especially with the Nation of Islam religion. As Judge Cohn found in Dowdy, these inmates are permitted to observe Eid, and, in fact, the MDOC, Michigan Department of Corrections, specifically implemented that order into their own policy directive after Judge Cohn entered that order. So you have the amended policy directive, and I'll give you the dates. I don't know what importance the MDOC policy directive has here. I mean, maybe it just shows that this was sort of just a screw-up rather than confusion about the law. But, I mean, you know, it's not federal law, so I don't know what it really matters. You're right. It's not federal law. But there are two reasons that I think it's important. Number one is it shows discrimination on Mr. Serafin's part. Not at all. I mean, it shows some kind of mistake, but it doesn't show anything invidious necessarily. Well, there is evidence that Mr. Serafin received the email that notified the entire MDOC staff that this was the new policy directive. He sent an email, didn't he, and got confused by the answer? I mean, people make mistakes. There are policies, and sometimes people don't follow them. It's not because of some nefarious thing. I've seen nothing zip in your brief or anywhere else that shows this was, you know, he's anti-Islam or something. I mean, it just looks like a screw-up. Sure. That's why it didn't happen again and again and again. If it's a screw-up, that's fine, but that's not really why we're here today. With all due respect, we're here to determine whether or not Mr. Serafin and Mr. Taylor are entitled to qualified immunity. So what we're asking is whether this rule, law, the Dowdy Order, was clearly established at the time of Mr. Serafin's denial of Mr. May's request to participate in the 2013 EID and Mr. Taylor's request to Mr. Taylor in 2014 to participate in that year's EID. Would it have been clear law in the Western District of Michigan? Yes, because it was for the entire MDOC in Michigan. So the entire Michigan Department of Corrections was bound by this order. Is it also an objective inquiry rather than a subjective inquiry, that here even if the official subjectively screwed up, do we look at it whether an objective, reasonable official would have known this was clearly established law? You can, but I believe... What do we do? Do we look at it subjectively or objectively? You look at it objectively. Okay, that's what I thought. Because this was disseminated to every MDOC. So that an objective prison official in this position would have known that Downey L. had been decided. In fact, I think that they were advised of it, in fact, and they knew that this practice was unconstitutional, what they were doing. All right. Yes. I neglected to bring the order with me. It's not my clerk's fault before they give it to me. What was the nature of that order? Was it injunctive, saying the state shall do these things, or was it saying you committed violations in the past, and therefore there's going to be some remedy? Prospective? Retrospective? It was an injunctive order that established that prisoners were allowed that Nation of Islam and Al-Islam inmates should be allowed to attend. Nation of Islam in particular? They were particularly pointed. One of the class members was a Nation of Islam. So the order enjoined the state of Michigan to allow these particular groups to practice this particular holiday in the state of Michigan? Yes. The policy directive that was later amended in response to that order specifically said that these inmates should be allowed to attend Eid, and the Michigan Department of Corrections Religious Handbook identifies Eid as an obligatory festival that inmates should be allowed to observe. So how does the allegations against these two chaplains do differ some As to Chaplain Taylor, essentially Mr. May says he made the request, and Chaplain Taylor, it's a dispute of fact, Chaplain Taylor says, I don't recall getting it and didn't call him out. But as to the other chaplain, Serafin, I believe, the allegation is that the request was made to observe Ramadan, and it was made I guess a second time to attend Eid, and then the chaplain said you need to convert to Al-Islam, another sect, which Mr. May says is very different from his religion. And so that may be in the realm of something more than just a mistake. I mean there you have a chaplain who is saying you can only attend religious service if you change your faith, essentially. So I don't know how that fits into what the order provided, if at all, because the order apparently says that certain, I guess both Eid, and I guess Nation of Islam and Al-Islam are both recognized as sects of Islam that are worthy of religious observance in the prison. So I guess my question is, does it make any difference here that the claims against Serafin are different? I mean this was not necessarily a mistake of fact in his case. He's saying, no, you've got to change to go to the service, and when Mr. May would not change, he didn't get called out. That is where the discrimination element comes into our case. So you get your 14th Amendment claim there as well. Yes. So Mr. Serafin specifically told Mr. May that in order to observe the Eid, he would need to change his religious designation in the Michigan Department of Corrections database from Nation of Islam to Al-Islam. Because previously, before the Dowdy Order, Al-Islam inmates were permitted to attend Eid and observe, while Nation of Islam, it wasn't a regular practice to allow them. In fact, there's a 2012 email which I believe you referenced, Judge, that a previous defendant who has since been dismissed, Martin, emailed Mr. Serafin and told him that because there was an issue of a mixed callout between these two groups, he normally didn't allow Nation of Islam and Al-Islam to observe the Eid together. So that's where that mistake comes in, but there's also this discriminatory element where Mr. Serafin is actively, after the Dowdy Order, actually two days after it was entered and the day after it was disseminated, let me make sure that's correct. What's the difference between the Dowdy Order and the Dowdy Judgment? Well, the order ordered that the MDOC needed to change its policy, and the judgment just made it final and binding. Just made it final? Mm-hmm. And that differs from... Okay, but the order, you're saying the order was in effect even before the judgment? Yes, it was. The judgment disposed of all the claims, the case in its entirety, basically getting it off the docket, but they were bound by the order that was entered before the judgment? Yes, yes. And the timeline is imperative here because the Dowdy Order was entered in May of 2013. That was before this. Mm-hmm. And Mr. May requested to attend the 2013 Eid on June 24th, 2013. The MDOC changed its policy directive in light of this order on July 6th, 2013. It became effective on July 26th, 2013. Four days later it was disseminated, and the day after Mr. Serafin told Mr. May that he was not permitted to observe Eid. So what's your response to Mr. Thurber's or your reliance on Colvin, that each defendant is responsible only for one violation here? Colvin said something to the effect that if it's not just sort of a systematic, repeated thing, you still have qualified immunity. Sure. Well, first, this is a repeated thing. This has happened two years in a row. It happened in 2013, 2014, albeit from different defendants, but both employees of the MDOC. Mr. Thurber argued that we have not cited any authority, and he has cited Colvin in support of the fact that missing a single religious service constitutes a constitutional violation. That's incorrect. First of all, let me distinguish Colvin from the case at bar. Colvin was a situation where a Jewish inmate was not receiving kosher meals. And there was an argument in that case for reasonable mistake on behalf of the prison official who did not supply him with those kosher meals. Our case involves Eid, which is a central tenet of the Nation of Islam and Religion, which is in the MDOC religious handbook, in the MDOC policy directive, and in abiding order. Further, we cited a case in our brief, Whitney v. Brown. It's a 1989 case from the Sixth Circuit, and that involved a Jewish inmate in the Michigan Department of Corrections who was not permitted to observe Seder or Passover. And the court found that those single religious services constituted a constitutional violation because of their significant importance. They only come around once a year. This is Whitney v. Brown. Who decided that? The Sixth Circuit. Okay. What was the second reason you gave before that reason? I'm sorry? You were giving three reasons. What was the second one? I missed it. I was giving three reasons. The reason before Whitney v. Brown. I'm sorry. Oh, Colvin is distinguishable because it is a kosher meal issue. The plaintiff in that case missed kosher meals, and there was an argument that the prison official made a reasonable mistake. Right. In our case, we don't have a reasonable mistake. At least, we don't believe we do because of that discriminatory email where Mr. Serafin I thought you gave another reason after that besides Whitney. That the kosher meals aren't considered. Missing a few kosher meals isn't considered of religious importance. That the MDOC policy book itself recognized the importance of the holiday. Yes. Okay. Thank you. Sorry about that. No, no. And I believe previously Mr. Thurber was asked why should the court rank the importance of religious holidays or religious observances. And that's not what we're asking this court to do. All we're asking the court to do today is determine whether or not these that Mr. Serafin or Mr. Taylor are not entitled to the qualified immunity. And we're asking you to just apply the policy that the MDOC itself has promulgated and to honor the order and the judgment from Dowdy. So we're not asking for you to rank any religious importance and ceremonies above one another. We're just asking you to apply what's in the record. Yeah, and the Whitney decision, I mean, it didn't really, I wouldn't say it ranked religious observances. But it did say that Passover is an especially critical and very special time in the Jewish religion. And that was critical to its holding as opposed to the missed kosher meal or something of that nature. And there are, I'm sorry. Go ahead, I'm sorry. There are other decisions from other circuits that are not binding but they are instructive. There's a case from the Ninth Circuit where a Native American prisoner was, he received the death penalty and he wanted to observe a religious ceremony before being executed. And the state argued that they had a legitimate interest in the safety of the security of the actual facility. The court found that that was a sham reason and that not being able to observe that one significant religious ceremony was a constitutional violation. And that was Rich v. Woodford, and that's a Ninth Circuit case. All right, the Attorney General argued this morning that decisions from the district court in the same district cannot clearly establish what the law is. I asked the question that Judge Cohen issued Downey L. and doesn't his decision in the same district, Eastern District of Michigan, clearly establish the law. And the response by the Attorney General was no. Do you have authority to the contrary that decisions in the same district court may clearly establish the law? Yes. What are they? Ohio Civil Services v. Employee Association, I believe it's v. CITER, S-E-I-T-E-R, and that's a Sixth Circuit case from 1988. And the site is 858 F2D 1171. And in that case, the court found that Sixth Circuit district courts may look to their own decisions in determining whether a right is clearly established and may look to the decisions of other courts in the same jurisdiction. So we do have authority saying that you can look to, I think it makes logical sense, that you're going to look to what lower courts did and what's going on in your jurisdiction. I think to ignore it would be illogical. So, yes, to show that it's clearly established. Do you have a case, I mean, this case might be different because arguably they violated a court order, but do you have a case where our court has recognized a single district court opinion to have clearly established the law in that district or anywhere else? Just, you know, citing one district court opinion, okay, the law is established. Actually doing that. There is a case, it's Riz Bridger v. Connelly, and it's a Sixth Circuit case from 2002. And I can get you the site. I don't have it on my chart right now. But it says that a right is clearly established if it's binding precedent from the Supreme Court, the Sixth Circuit, the district court. I know they have that recitation. I'm wondering if anybody's actually done it. And they said, okay, we got, you know, Jones v. Smith from the Western District of Michigan, and that clearly established the law. Everybody should have known it from a district court opinion, which, you know, is, well, that's what I'm asking. Not that I'm aware of, but I don't think that that changes our analysis. And I know that my time is up, so. Okay. Thank you. Thank you, Ms. Firstchild. Mr. Thurber. Yes. I'm good at talking fast, so I'll try and get as much in as I can here. Would Judge Cohn think that this was a violation of his order? Knowing Judge Cohn, he probably would. That's a very honest answer. That is an honest answer. That's an honest answer, yes. He probably would be raising his voice at me right now if he heard me say that it was not. But. He might be listening. Yes, he might be. Judge Cohn has, he's, you're right, he may have that sort of power. So what I would refer back to, and this is back, again, I realize it's an unpublished opinion, but this is Judge McKeague's opinion in Hermanson. And I know you probably don't want me to just read too much into the record. But Judge McKeague said that, and I'm quoting him here. He said, Yet even if one or more of the individual defendants was actually aware of the guidelines implemented by agreement at KSR, this is having to do with kosher meal, the fact remains that no court had in authoritative precedent interpreted the First Amendment as requiring strict compliance with the guidelines, whether at KSR or elsewhere. Even though the Froman Agreement, which was the previous case that there had been, I believe, some sort of consent judgment in, the Froman Agreement was enforced by district court order. And this is the key part. It never ripened into a precedential ruling on the merits of the free exercise claim. The Froman Agreement simply did not become precedent defining the law, defining the clearly established law. So I guess, I mean, maybe we're at loggerheads on this issue, but I would say that the short answer is Judge Cohen's opinion did not establish clearly, did not set forth clearly established law. And the issue in this case is, again, I would bring it back to a more specific level, and that's what I want to keep coming back to, is even if Judge Cohen's order did say there's this broad right for every Muslim to attend an Eid service, what the question in this case is whether missing a single Eid service is enough to rise to the level of constitutional violation. And that's where I think the law is unclear. What about Ms. Fernchild's point that this happened two years in a row? You're right. We're not talking about a single violation. Right, and obviously that doesn't... And then he got out of prison, right? Right, he did. So this got violated as much as it could have been violated for him. You're right, and that certainly doesn't look so great. A hundred percent. But what I would say is, but it was different people doing different things, and you have to look at these as individual instances. I get it that that doesn't look so great. But if it was Mr. Serafin doing it two years in a row, I would say absolutely, certainly for the second violation he would not be entitled, or if Mr. Taylor had done it in 2013 and did it again in 2014. I agree with you that the second violation, he doesn't get any slack on that. And just briefly, I know Ms. Fernchild did refer to policy. This court has said in Roberts v. City of Troy, which is a 1985 case, that essentially a violation of policy is not sufficient for a constitutional violation. So with that, I would ask that the court reverse the district court's ruling, find that my clients are entitled to qualified immunity, and remand this matter for judgment to be entered in their favor. Thank you. Okay. Thank you, counsel, both of you, for your arguments this morning. We appreciate them. The case will be submitted, and you may adjourn court.